UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:16-CV-82043-RLR

CHIRON RECOVERY CENTER, LLC,
a Florida Limited Liability Company,
Plaintiff,

v.

AMERIHEALTH HMO OF NEW JERSEY, INC.,
a New Jersey Corporation, a/k/a/
"AMERIHEALTH INSURANCE CO. OF
NEW JERSEY," and MAGELLAN
HEALTHCARE, INC., a Delaware Corporation,
Defendants.
_______________________________________/

**SECOND AMENDED COMPLAINT**

Plaintiff, complaining of the conduct of the Defendants, alleges as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff is a citizen of Florida with its principal place of business located in Palm Beach Gardens, Palm Beach County, State of Florida.

2. Defendant AmeriHealth HMO of New Jersey, Inc. ("AmeriHealth") is a citizen of New Jersey with its principal place of business at 1901 Market Street, Philadelphia, Pennsylvania. AmeriHealth conducts business under the name "AmeriHealth Insurance Co. of New Jersey."

3. Defendant Magellan Healthcare, Inc. ("Magellan") is a Delaware Corporation with its principal place of business at 6950 Columbia Gateway Drive, Columbia, Maryland. Magellan is a citizen of Delaware.

4. Subject matter jurisdiction is predicated upon 28 U.S. Code § 1332(a) as the parties are citizens of diverse states and the amount in controversy exceeds $75,000.00.

5. AmeriHealth is an insurance company conducting business in multiple states. Magellan is a healthcare benefits administrator conducting business in multiple states.

6. The respective Defendants are engaged in systematic contacts with the State of Florida such that they would expect to be haled into Court there.

7. Defendant AmeriHealth is an insurance company that provides health insurance benefits to subscribers in various states. AmeriHealth extends contract benefits to its subscribers when they seek care in Florida, even if those subscribers are not citizens or residents of Florida. Upon information and belief, AmeriHealth issued the five insurance policies that are the subject of this lawsuit under the authority of its New Jersey insurance license.

8. Defendant Magellan acts as an agent of AmeriHealth in issuing both verbal and written pre-authorizations to caregivers who provide services to AmeriHealth's insureds. Magellan performs this service for AmeriHealth in various states. The five AmeriHealth insureds who are the subjects of this lawsuit do not reside in Florida; they are citizens and residents of New Jersey. However, because these insured persons travelled to Plaintiff's medical facility in Florida for treatment, Magellan communicated into Florida when it issued pre-authorizations to Plaintiff to provide treatments to these insureds.

9. In this fashion, AmeriHealth, acting through its agent Magellan, is conducting or carrying on a business in the State of Florida by providing pre-authorizations for treatments to be performed in this State. Accordingly, both Defendants are subject to personal jurisdiction in the forum state, the State of Florida, under Sections 48.193(1)(a)(1), (2), and (7), Florida Statutes.

10. In particular, AmeriHealth, acting through its agent Magellan, entered into an agreement with Plaintiff to provide insurance coverage for services to be rendered to five different New Jersey residents who are subscribers and who sought covered services in the State of Florida,

and then, after services were rendered, Defendants refused to perform. In this manner, Defendants have breached respective contracts that required them to perform acts in the State of Florida, and are therefore subject to personal jurisdiction pursuant to Section 48.193(1)(a)(7), Florida Statutes.

## FACTS COMMON TO ALL COUNTS

11. Plaintiff provides services for persons suffering from substance addiction.

12. Defendant AmeriHealth is a health insurance company that sells policies to various subscribers in the State of New Jersey. AmeriHealth is subject to the requirements of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010) (the "ACA").

13. Defendant Magellan is a healthcare benefits administrator. Magellan was engaged by AmeriHealth to provide verification of coverage and pre-authorizations of treatment programs to service providers who are contacted to treat AmeriHealth's insurance subscribers.

14. In 2016, Plaintiff was requested to provide substance abuse services to five of AmeriHealth's insureds/subscribers, Patient No. 1, Patient No. 2, Patient No. 3, Patient No. 4, and Patient No. 5 (collectively, the "Patients"), in Palm Beach County, Florida.[1]

15. Each of the Patients were issued an AmeriHealth insurance policy in New Jersey. Based on information provided by the Patients and the Defendants, each Patient is a citizen and resident of New Jersey. The Patients' health policies were not issued through a health maintenance organization ("HMO"), nor were they issued via employee benefit plans.

16. Although the Patients are New Jersey residents covered by AmeriHealth policies issued in New Jersey, each Patient chose to travel to Florida for treatment. The treatments began in July of 2016 and continued through December of 2016. All of the treatment periods were pre-

---

[1] To maintain confidentiality, the subject AmeriHealth insurance subscribers will be identified by a patient number, *e.g.*, "Patient No. __."

authorized by AmeriHealth, acting through its agent Magellan.

17. When Plaintiff first called AmeriHealth to verify the Patients' benefits and coverage, AmeriHealth instructed Plaintiff to contact Magellan, who acts as AmeriHealth's representative for the purpose of pre-authorizing medical treatments. Plaintiff followed this instruction. Over the next several months, Magellan repeatedly verified that: (i) Magellan is AmeriHealth's agent for the purpose of pre-authorizing treatment programs; (ii) each Patient possessed a valid and effective AmeriHealth insurance policy; (iii) Plaintiff's treatment program was medically necessary for the Patients for specific dates; and (iv) Plaintiff's treatment program was appropriate for payment for those same dates.

18. In addition to these verbal pre-authorizations, Magellan repeatedly sent Plaintiff pre-authorization letters for each Patient. A redacted sample of the pre-authorization letters is attached to this Complaint as Exhibit 1.[2]

19. As illustrated by Exhibit 1, Magellan's pre-authorizations provided the following information: (i) the Patients' current AmeriHealth policy/identification numbers; (ii) confirmation that Magellan was authorized by AmeriHealth to ensure that Plaintiff's treatment program was "appropriate for payment purposes" for specific dates; (iii) the date ranges ("service periods") in which Plaintiff's treatment program was pre-authorized for each Patient; (iv) authorization codes that corresponded to the service periods; and (v) directions on how Plaintiff should submit its treatment revenue codes (CMS 1500 or UB04 codes) to AmeriHealth to expedite payment.

20. In the chart provided below, Plaintiff details the service periods in which AmeriHealth and Magellan pre-authorized Plaintiff's treatments for each Patient:

---

[2] In order to protect the Patients' confidentiality, Plaintiff has redacted their respective names, addresses, authorization codes, and policy/identification numbers from Exhibit 1.

| **Patient** | **Dates Magellan issued a pre-authorization letter to Plaintiff**[3] | **Service periods covered by Magellan's pre-authorizations to Plaintiff** |
|---|---|---|
| Patient No. 1 | • 09/13/2016<br>• 09/19/2016<br>• 09/26/2016<br>• 10/10/2016<br>• 10/25/2016<br>• 11/18/2016<br>• 11/29/2016<br>• 12/01/2016<br>• 12/06/2016 | • 09/12/2016 – 09/18/2016<br>• 09/19/2016 – 09/25/2016<br>• 09/26/2016 – 10/05/2016<br>• 10/06/2016 – 10/25/2016<br>• 10/26/2016 – 11/17/2016<br>• 11/21/2016 – 12/01/2016<br>• 11/25/2016 – 12/01/2016<br>• 12/02/2016 – 12/08/2016<br>• 12/06/2016 – 12/29/2016 |
| Patient No. 2 | • 09/13/2016<br>• 09/20/2016<br>• 09/27/2016<br>• 10/10/2016<br>• 10/18/2016<br>• 11/23/2016<br>• 11/30/2016<br>• 12/09/2016 | • 09/13/2016 – 09/20/2016<br>• 09/21/2016 – 09/27/2016<br>• 09/28/2016 – 10/04/2016<br>• 10/05/2016 – 10/21/2016<br>• 10/18/2016 – 11/17/2016<br>• 11/22/2016 – 12/01/2016<br>• 11/28/2016 – 12/21/2016<br>• 12/08/2016 – 12/14/2016 |
| Patient No. 3 | • 07/12/2016<br>• 07/20/2016<br>• 08/01/2016<br>• 08/08/2016<br>• 08/23/2016<br>• 08/31/2016<br>• 09/28/2016<br>• 10/18/2016<br>• 12/13/2016 | • 07/11/2016 – 07/20/2016<br>• 07/21/2016 – 07/31/2016<br>• 08/01/2016 – 08/08/2016<br>• 08/09/2016 – 08/23/2016<br>• 08/24/2016 – 08/31/2016<br>• 09/01/2016 – 09/29/2016<br>• 09/29/2016 – 10/13/2016<br>• 10/17/2016 – 10/27/2016<br>• 12/09/2016 – 12/20/2016 |
| Patient No. 4 | • 08/16/2016<br>• 08/22/2016<br>• 08/29/2016<br>• 09/09/2016 | • 08/16/2016 – 08/22/2016<br>• 08/23/2016 – 08/29/2016<br>• 08/30/2016 – 09/08/2016<br>• 09/09/2016 – 09/30/2016 |
| Patient No. 5 | • 08/16/2016<br>• 08/22/2016<br>• 08/29/2016<br>• 09/09/2016 | • 08/15/2016 – 08/22/2016<br>• 08/23/2016 – 08/29/2016<br>• 08/30/2016 – 09/07/2016<br>• 09/08/2016 – 09/29/2016 |

[3] In some instances, Magellan issued a pre-authorization letter shortly after the date of its verbal pre-authorization.

21. In reliance upon the Defendants' representations, Plaintiff rendered services to the Patients. To ensure payment, Plaintiff transmitted revenue codes for the pre-authorized services to AmeriHealth. For several months, AmeriHealth paid Plaintiff based upon those revenue codes. During that time, neither of the Defendants communicated any concerns about the Patients' coverage to Plaintiff.

22. This abruptly changed in the latter half of December, 2016. Suddenly, AmeriHealth and Magellan informed Plaintiff that their pre-authorization of services for all five Patients had been retroactively rescinded. As a result, the Defendants refused to pay Plaintiff for any services provided during or after the middle of September, 2016.

23. Originally, the Defendants gave no explanation for their "retroactive rescissions." Since this lawsuit was filed, it has come to light that the Defendants improperly manufactured the reasons for their policy rescissions.

24. Specifically, in October of 2016, AmeriHealth began mailing a series of letters to the Patients' New Jersey addresses. AmeriHealth's letters questioned whether the Patients were New Jersey residents, warning that their coverage would be rescinded if they did not provide proof of residency within two weeks. Because the Patients were receiving treatment in Florida at that time, they never received the letters and were unable to respond. Redacted copies of AmeriHealth's letters are attached to this Complaint as Exhibit 2.

25. Even while AmeriHealth was mailing its rescission warning letters to Patients No. 1-3 at their New Jersey addresses, Magellan was pre-authorizing Patients No. 1-3 to continue receiving treatment at Plaintiff's facility in Florida. The Defendants seemingly expected the Patients to be in two places at the same time.

26. Similarly, Patients No. 4-5 continued to receive treatment at other Florida facilities during the timeframe in which AmeriHealth's rescission warning letters demanded a response.[4] For that reason, they were predictably unable to respond to AmeriHealth's rescission warning letters. Upon information and belief, Patient No. 5 even communicated to AmeriHealth that he would be temporarily unable to receive mail at his New Jersey address because he was in Florida. This did not prevent AmeriHealth from sending its rescission warning letters to Patient No. 5's New Jersey address, rather than contacting him by phone or email. Before this lawsuit was filed, Patient No. 5 was not even aware that his New Jersey residency had ever been contested.

27. The Defendants knew or should have known the Patients could not respond to the rescission warning letters AmeriHealth sent to New Jersey. The Defendants knew or should have known that the Patients were being treated in Florida when AmeriHealth sent those letters.

28. All conditions precedent to the counts alleged in this Complaint have been performed or waived.

## COUNT I
## PROMISSORY ESTOPPEL AGAINST MAGELLAN

29. Plaintiff repeats each of the aforesaid allegations as though fully restated here.

30. Defendant Magellan represented to Plaintiff that: (i) the Patients' respective AmeriHealth policies were valid; (ii) Plaintiff was pre-authorized to administer its substance treatment program to the Patients for specific service periods; and (iii) payment would be made to Plaintiff for providing treatments for those service periods.

---

[4] Upon information and belief, Patient No. 4 was either at a sober living facility in Florida or visiting a relative in Michigan as part of his outpatient treatment. Regardless, AmeriHealth was on notice that Patient No. 4 was not at his New Jersey address during this time.

31. Magellan reasonably should have expected that Plaintiff would rely upon this representation.

32. After receiving verification and authorization, Plaintiff rendered services to the Patients. Thereafter, Plaintiff rendered revenue codes for services provided to the five Patients.

33. Plaintiff reasonably relied upon the representations of Magellan.

34. After Plaintiff rendered services and revenue codes for those services for the benefit of the five insured Patients, Magellan purported to retroactively rescind the respective authorizations and reported that payment would be denied. Magellan now contends that the Patients did not possess valid AmeriHealth policies.

35. Plaintiff would not have rendered service to the five Patients but for the representations of Magellan. By reason of the foregoing, Plaintiff has suffered harm.

**WHEREFORE**, Plaintiff seeks judgment against Magellan for its unpaid pre-authorized charges for all five Patients, up to the amount authorized under applicable law, together with prejudgment interest, costs, and such other and further relief for the benefit of Plaintiff as the Court shall find just and proper.

## COUNT II
## PROMISSORY ESTOPPEL AGAINST AMERIHEALTH

36. Plaintiff repeats the allegations at paragraphs 1–28 as though fully restated here.

37. Defendant AmeriHealth, through its agent Magellan, represented to Plaintiff that: (i) the Patients' respective AmeriHealth policies were valid; (ii) Plaintiff was pre-authorized to administer its substance treatment program to the Patients for specific service periods; and (iii) payment would be made to Plaintiff for providing treatments for those service periods.

38. AmeriHealth reasonably should have expected that Plaintiff would rely upon these representations, which AmeriHealth authorized Magellan to make on AmeriHealth's behalf.

39. After receiving verification and authorization, Plaintiff rendered services to the five insured Patients. Thereafter, Plaintiff rendered charges to AmeriHealth for services provided to the five Patients.

40. In rendering services to the Patients, Plaintiff reasonably relied upon the representations made by AmeriHealth, through its agent Magellan.

41. After Plaintiff rendered services and then provided AmeriHealth with charges for those services, AmeriHealth purported to retroactively rescind the authorizations and reported that payment would be denied. AmeriHealth now contends that the Patients did not possess valid AmeriHealth policies. But for the representations of AmeriHealth, through its agent Magellan, Plaintiff would not have rendered service to the five Patients.

42. By reason of the foregoing, Plaintiff has suffered harm.

**WHEREFORE**, Plaintiff seeks judgment against AmeriHealth for its unpaid pre-authorized charges for all five Patients, up to the amount authorized under applicable law, together with prejudgment interest, costs, and such other and further relief for the benefit of Plaintiff as the Court shall find just and proper.

## COUNT III
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT AGAINST ALL DEFENDANTS

43. Plaintiff repeats the allegations at paragraphs 1–28 as though fully restated here.

44. Defendants are involved in an improper and deceptive scheme whereby authorization is given to service providers, services are rendered, and after charges are transmitted,

Defendants purport to retroactively rescind all authorizations previously given.

45. Defendants have actual knowledge that service providers rely upon the verifications and authorizations supplied by insurance companies in agreeing to undertake the care of insureds.

46. No legitimate basis exists for the practice of manufacturing retroactive rescissions as the Defendants have done.

47. Defendants intend that service providers, such as Plaintiff, seek insurance verification and pre-authorization of treatment before providing services to AmeriHealth's insureds. Plaintiff has been injured by reason of this deceptive and unfair practice.

48. Defendants' conduct violated Section 501.204, *et seq.*, Florida Statutes (2014), commonly referred to as the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

49. AmeriHealth and Magellan are not protected by the insurance-related exception found in Fla. Stat. § 501.212(4)(a) because, while conducting the activity that gives rise to this lawsuit, Defendants were not acting in the capacity of persons regulated by Florida's Office of Insurance Regulation of Financial Services Commission ("FOIR"), or Florida's former Department of Insurance (now the Office of Financial Services). This is true for two reasons. First, the Patients whose health is insured, and who therefore constitute the insured risks, are permanently located in New Jersey, not Florida. Second, upon information and belief, AmeriHealth issued each of their policies using its New Jersey insurance license, which would not be subject to regulation by the FOIR, but would instead be regulated by New Jersey's Division of Banking and Insurance ("NJDOBI"). Because questions about the applicability of exemptions found in Fla. Stat. § 501.212(4)(a) are resolved by determining whether the activity or person being sued was acting in a capacity that is subject to the FOIR's regulatory authority, and because the

FOIR would not have authority over insurance licenses issued in New Jersey, it is proper for Plaintiff, a Florida-based provider, to sue Defendants under FDUTPA.

50. Plaintiff has necessarily engaged the services of an attorney to bring this action and will incur legal fees as a result. Plaintiff seeks recovery of such attorneys' fees.

**WHEREFORE,** Plaintiff seeks judgment against both Defendants, jointly and severally against each Defendant, for its unpaid pre-authorized charges for all five Patients, up to the amount authorized under applicable law, together with prejudgment interest, attorneys' fees, costs, and such other and further relief for the benefit of Plaintiff as the Court shall find just and proper.

## COUNT IV
## VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT AGAINST ALL DEFENDANTS

51. Plaintiff repeats the allegations at paragraphs 1–28 as though fully restated here. This count is pled in the alternative, in the event that the Court holds that Defendants are exempt from FDUTPA but are otherwise subject to New Jersey's statutory consumer law.

52. Defendants are involved in an improper and deceptive scheme whereby authorization is given to service providers, services are rendered, and after charges are transmitted, Defendants purport to retroactively rescind all authorizations previously given.

53. Defendants have actual knowledge that service providers in various states, such as Plaintiff, rely upon the verifications and authorizations supplied by insurance companies in agreeing to undertake the care of insureds. Defendants intend that service providers, such as Plaintiff, seek insurance verification and pre-authorization of treatment before providing services to AmeriHealth's insureds. No legitimate basis exists for the practice of manufacturing retroactive rescissions as the Defendants have done.

54. Plaintiff and Patients No. 1–5 have been injured by Defendants' false promise of payment for treatments provided during the authorized service periods, including the service periods described at paragraph 20 of this Complaint. Plaintiff has been assigned the benefits of Patients No. 1–5 and can therefore sue for damages they have suffered as a result of Defendants' conduct. Redacted copies of the Patients' respective Assignments of Benefits are attached as Exhibit 3.

55. Plaintiff's direct injury consists of Defendants' failure to pay Plaintiff for the service periods, for which authorization was granted and then retroactively rescinded. Plaintiff's indirect injury, brought on behalf of the Patients, is based on the Defendants' retroactive rescission of the Patients' policies. As explained above at paragraphs 23-27, the Defendants improperly manufactured the pretexts for rescinding the Patients' policies.

56. Defendants' conduct violated N.J. Stat. Ann. 56:8-1 *et seq.*, commonly referred to as the New Jersey Consumer Fraud Act ("NJCFA").

57. Plaintiff has necessarily engaged the services of an attorney to bring this action and will incur legal fees as a result. Plaintiff seeks recovery of such attorneys' fees.

**WHEREFORE**, Plaintiff seeks judgment against both Defendants, jointly and severally against each Defendant for treble damages, based on Plaintiff's unpaid pre-authorized charges for all five Patients, and calculated based on the amount of those charges the Defendants were required to pay under applicable law, together with prejudgment interest, attorneys' fees, costs, and such other and further relief for the benefit of Plaintiff as the Court shall find just and proper.

## COUNT V
## BREACH OF CONTRACT ON BEHALF OF PATIENTS AGAINST AMERIHEALTH

58. Plaintiff repeats the allegations at paragraphs 1–28 and paragraph 54 as though fully restated here.

59. As Plaintiff has obtained Assignments of Benefits from Patients No. 1–5, Plaintiff stands in their shoes and sues AmeriHealth for breaching each of the Patients' insurance policies.

60. AmeriHealth issued Patients No. 1-5 their respective health insurance policies, each of which purport to incorporate the requirements of New Jersey law, and then accepted insurance premium payments from Patients No. 1–5.

61. After AmeriHealth was charged for covered treatments, it purported to retroactively rescind Patients No. 1–5's policies. This was done under the pretext of sending warning letters to the Patients' New Jersey addresses, demanding proof of residency. Of course, AmeriHealth was on notice that the Patients would be unable to respond to letters sent to their New Jersey addresses. AmeriHealth had authorized the Patients to be in Florida at that time.

62. Since AmeriHealth had notice that the Patients would not be in a position to receive the warning letters, AmeriHealth failed to inform the Patients of this coverage dispute until after the policies were rescinded. This constituted a breach of New Jersey's utilization management regulations. *See* N.J.A.C. 11:24A–3.4(f). Because AmeriHealth's policies purport to be consistent with New Jersey law, this also constituted a breach of the Patients' respective policies.

63. This breach damaged Patients No. 1–5 by interrupting their coverage and/or leaving them personally liable for payment of the services rendered.

**WHEREFORE**, Plaintiff seeks judgment against AmeriHealth for its unpaid pre-authorized charges for all five Patients, up to the amount authorized under applicable law, together

with prejudgment interest, costs, and such other and further relief for the benefit of Plaintiff as the Court shall find just and proper.

**COUNT VI**
**BREACH OF DIRECT CONTRACT WITH PLAINTIFF AGAINST AMERIHEALTH**

64. Plaintiff repeats the allegations at paragraphs 1–28 as though full restated here.

65. AmeriHealth insures Patients No. 1–5 for the costs of services, including substance abuse counseling and related services mandated under the ACA. AmeriHealth promised Plaintiff, tacitly or overtly, that AmeriHealth would pay Plaintiff for treatments provided to the Patients during specific service periods. In reliance on AmeriHealth's promise, Plaintiff provided the authorized services. This constituted a contract that was either express or implied in fact.

66. AmeriHealth's promise was communicated to Plaintiff by the following statements and conduct: (i) AmeriHealth's transmittal of authorization codes for treatment via its agent, Magellan; (ii) AmeriHealth's statements, through its agent Magellan, that specific service periods of treatment were authorized and medically necessary; (iii) AmeriHealth's delivery of advice, through its agent Magellan, as to how Plaintiff may "expedite" payment when "filing for reimbursement" through one of two types of revenue codes (CMS 1500 or UB04 codes); and (iv) AmeriHealth's course of dealing, including AmeriHealth's payment to Plaintiff for some treatments provided to three of the Patients during part of the authorized service periods.

67. In other words, AmeriHealth provided express authorization to Plaintiff to provide service to these five individuals, Patients No. 1–5, after verifying that their AmeriHealth insurance policies were in full force and effect.

68. After receiving verification and authorization via the aforementioned authorization letters, Plaintiff rendered services to the five Patients, then rendered charges to AmeriHealth for

those services. In doing so, Plaintiff reasonably relied upon AmeriHealth's tacit or express promise of payment for treatments rendered during the authorized service periods.

69. After Plaintiff rendered services and revenue codes for those services, AmeriHealth failed and refused to pay for such services on behalf of the five Patients.

70. By reason of the foregoing, Plaintiff has suffered harm.

**WHEREFORE**, Plaintiff seeks judgment against AmeriHealth for its unpaid pre-authorized charges for all five Patients, up to the amount authorized under applicable law, together with prejudgment interest, costs, and such other and further relief for the benefit of Plaintiff as the Court shall find just and proper.

## COUNT VII
## NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS

71. Plaintiff repeats the allegations at paragraphs 1–28 as though fully restated here.

72. Acting as an agent of AmeriHealth, Magellan informed Plaintiff that Magellan was authorized to "administer" AmeriHealth's behavioral health program and determine which types of treatment and service periods were necessary, appropriate for payment, and authorized by AmeriHealth.

73. Based on this authority, Defendants authorized Plaintiff to provide treatments to Patients No. 1–5 for specific service periods that were subject to extension upon further review. Defendants made these representations to guide Plaintiff's determination of whether to expend resources providing treatments to the five Patients.

74. Plaintiff justifiably relied upon Defendants' representations when Plaintiff rendered the authorized services to Patients No. 1–5. As a result, Plaintiff sought reimbursement for the specific time periods the Defendants pre-authorized.

75. After Plaintiff rendered services and issued revenue codes, Defendants purported to retroactively rescind the authorizations and reported that payment would be denied. Contrary to their prior representations, the Defendants now contend that the Patients did not possess valid AmeriHealth policies.

76. Plaintiff would not have rendered services to Patients No. 1–5 but for the representations of Defendants. By reason of the foregoing, Plaintiff has suffered harm.

**WHEREFORE**, Plaintiff seeks judgment against both Defendants, jointly and severally against each Defendant, for its unpaid pre-authorized charges for all five Patients, up to the amount authorized under applicable law, together with prejudgment interest, costs, and such other and further relief for the benefit of Plaintiff as the Court shall find just and proper.

Dated: May 1, 2017

Respectfully submitted:

KELLEY KRONENBERG, P.A.
*Counsel for Plaintiff*
1475 Centrepark Boulevard, Suite 275
West Palm Beach, Florida 33401
Telephone: (561) 684-5956 Fax: (561) 684-5753

By: */s/ Irwin Gilbert*
Irwin R. Gilbert, Esq.
Florida Bar No. 099473
Jimmy W. Mintz, Esq.
Florida Bar No. 113363
igilbert@kelleykronenberg.com
jmintz@kelleykronenberg.com
irgeservice@kelleykronenberg.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 1, 2017, I have electronically filed the foregoing instrument with the Court using CM/ECF. I further certify that the foregoing instrument is being served this day on Richard P. Hermann, II, Esq. and David J. Depiano, Esq., Shapiro Blasi Wasserman & Hermann, P.A., 7777 Glades Road, Suite 400, Boca Raton, FL 33434, rphermann@sbwlawfirm.com, djdepiano@sbwlawfirm.com, (561) 477-7800, *counsel for Defendant, AmeriHealth HMO of New Jersey, Inc.*, on Edward S. Wardell, Esq., Conell Foley, LLP, 457 Haddonfield Rd, Ste 230, Cherry Hill, New Jersey 08002, ewardell@connellfoley.com, (856) 317-7100, *counsel for Defendant, AmeriHealth HMO of New Jersey, Inc.*, and on Daniel Alter, Esq. and Tiffany M. Walters, Esq., Gray Robinson, P.A., 401 E. Las Olas Blvd., Ste. 1000, Fort Lauderdale, FL 33301, dan.alter@gray-robinson.com, (954) 761-8111, *counsel for Defendant, Magellan Healthcare, Inc.*, either via transmission of Notices of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Irwin Gilbert*

Irwin R. Gilbert, Esq.
Florida Bar No. 099473
Jimmy W. Mintz, Esq.
Florida Bar No. 113363
igilbert@kelleykronenberg.com
jmintz@kelleykronenberg.com
irgeservice@kelleykronenberg.com