UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:16-CV-82043-ROSENBERG/HOPKINS

CHIRON RECOVERY CENTER, LLC,
a Florida Limited Liability Company,

    Plaintiff,

v.

AMERIHEALTH HMO OF NEW JERSEY, INC.,
a New Jersey Corporation, a/k/a/ "AMERIHEALTH
INSURANCE CO. OF NEW JERSEY," and
MAGELLAN HEALTHCARE, INC.,
a Delaware Corporation,

    Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
MAGELLAN AND AMERIHEALTH'S MOTIONS TO DISMISS**

**THIS CAUSE** is before the Court on Magellan Healthcare Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint, DE 49, and AmeriHealth's Motion and Incorporated Memorandum of Law to Dismiss and Notice of Joinder in Magellan Healthcare, Inc.'s Motion to Dismiss the Second Amendment Complaint Regarding All Counts Except for Count V, DE 50. For the reasons set forth below, the Court denies the motions as to all counts, except Count IV, violation of New Jersey Consumer Fraud Act against Magellan and AmeriHealth.

**I.    BACKGROUND[1]**

Plaintiff, Chiron Recovery Center, LLC, provides services for people suffering from substance addiction. DE 47 ¶ 11. Defendant AmeriHealth is a health insurance company that sells policies to residents of New Jersey and Defendant Magellan is a healthcare benefits

---

[1] All factual allegations in this section are drawn from Plaintiff's Second Amended Complaint, *see* DE 47, and accepted as true for the purpose of these motions to dismiss.

administrator. *Id.* ¶¶ 12–13. AmeriHealth contracted with Magellan to perform various services including providing verification of coverage and pre-authorizations of treatment programs to service providers who were contacted to treat AmeriHealth's insurance subscribers. *Id.* ¶ 13.

In 2016, Chiron was requested to provide substance abuse treatment to five patients who were AmeriHealth policy holders.[2] *Id.* ¶¶ 14–15. All of the patients were New Jersey residents but travelled to Florida for treatment. *Id.* ¶ 16. When Chiron first called AmeriHealth to verify the patients' insurance coverage, Chiron was instructed to contact Magellan, who acted as AmeriHealth's agent regarding pre-authorization of medical treatments. *Id.* ¶ 17. Chiron contacted Magellan several times over the next months and Magellan informed Chiron that each patient had an AmeriHealth insurance policy and that Chiron's treatment was medically necessary and appropriate for payment during specific dates. *Id.* Magellan also sent Chiron pre-authorization letters that included each patient's Amerihealth policy number, confirmation that Magellan was authorized by AmeriHealth to ensure that Chiron's treatment program was appropriate for payment purposes for specific dates, the date ranges during which time the treatment was pre-authorized, authorization codes, and directions on how to submit treatment revenue codes to AmeriHealth to expedite payment. *Id.* ¶ 19.

Chiron rendered services to the patients. *Id.* ¶ 21. Chiron submitted authorization codes to AmeriHealth for the pre-authorized services and received payment from AmeriHealth for several months. *Id.*

In October, 2016, AmeriHealth began mailing letters to the patients' New Jersey addresses asking them to verify that they were New Jersey residents and threatening to rescind

---

[2] The Amended Complaint does not state who initiated the requests for Chiron to provide treatment to these patients. *See id.* ¶¶ 14–15.

their health insurance if they did not provide proof of residency. *Id.* ¶ 24. At this time, the patients were receiving treatment in Florida and did not respond to the letters. *Id.*

In December, 2016, AmeriHealth stopped paying Chiron. *Id.* ¶ 22. AmeriHealth and Magellan told Chiron that the pre-authorization for the five patients had been retroactively rescinded and that they would not pay for any services provided during or after the middle of September, 2016. *Id.*

Chiron filed its Second Amended Complaint on May 1, 2017 alleging promissory estoppel against Magellan (Count I) and AmeriHealth (Count II), violation of Florida Deceptive and Unfair Trade Practices Act against Magellan and AmeriHealth (Count III), violation of New Jersey Consumer Fraud Act against Magellan and AmeriHealth (Count IV), breach of contract on behalf of patients against AmeriHealth (Count V), breach of direct contract with Plaintiff against AmeriHealth (Count VI), and negligent misrepresentation against Magellan and AmeriHealth (Count VII). DE 47. Chiron attached the pre-authorization letters to its Complaint. *See* DE 47-1. The Defendants have moved to dismiss all of the claims except the claim of breach of contract on behalf of the patients against AmeriHealth. *See* DE 49; DE 50.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (alteration added) (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain

"more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *Twombly*, 550 U.S. at 555 (citation omitted), and must provide sufficient facts to "give the defendant fair notice of what the … claim is and the grounds upon which it rests," *id.* Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556).

## III. ANALYSIS

In their motions to dismiss, Magellan and AmeriHealth[3] make similar arguments for why the promissory estoppel and negligent misrepresentation claims should be dismissed; they argue that Chiron did not meet the pleading standard and that Chiron's reliance was unreasonable as a matter of law. *See* DE 49 at 6, 14–15, 17–18; DE 50 ¶ 7. The Court addresses these arguments first. The Court then addresses the argument that Chiron failed to allege the elements of breach of contract against AmeriHealth. Finally, as Chiron pleaded a claim under Florida consumer fraud law and under New Jersey consumer fraud law in the alternative, the Court analyzes whether Florida or New Jersey law should apply.

### A. Promissory Estoppel and Negligent Misrepresentation Against Magellan and AmeriHealth

Magellan and AmeriHealth argue that the promissory estoppel and the negligent misrepresentation counts should be dismissed because (1) Chiron failed to meet the pleading standard and (2) Chiron's reliance was unreasonable.

---

[3] AmeriHealth incorporated by reference Magellan's motion to dismiss arguments for the counts that are alleged against both defendants. DE 50 ¶ 7.

i.  The Pleading Standard

Magellan and AmeriHealth argue that Chiron failed to plead the promissory estoppel and negligent misrepresentation claims with sufficient specificity. They argue that both claims are subject to the heightened pleading requirement applicable for claims of fraud.

Negligent misrepresentation claims "sound in fraud" and require the heightened pleading standard. *Lamm v. State St. Bank and Trust*, 749 F.3d 938, 951 (11th Cir. 2014) (citing *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1511 (11th Cir. 1993)). Federal Rule of Civil Procedure 9(b) provides the heightened pleading standard for claims of fraud. It states that "a party must state with particularity the circumstances constituting fraud." This standard requires pleading: "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *Peacock Med. Lab, LLC v. Unitedhealth Grp., Inc.*, No. 14-81271-Hurley/Hopkins, 2015 WL 5118122, at *4 (S.D. Fla. Sept. 1, 2015) (quoting *McGee v. JP Morgan Chase Bank, NA*, 520 F. App'x 829, 831 (11th Cir. 2013)). This is to ensure that defendants in these actions have notice of the allegedly fraudulent conduct. *Id.* The Court examines Plaintiff's negligent misrepresentation claim under this heightened pleading standard.

The Court does not apply this heightened pleading standard to the Plaintiff's promissory estoppel claim. Rather, the Court examines Plaintiff's promissory estoppel claim under the "notice pleading" of Federal Rule of Civil Procedure (8)(a)(2). Some courts have held that promissory estoppel claims require the heightened pleading standard when they "sound in fraud." *Peacock Med. Lab*, 2015 WL 5118122 at *4; *MeterLogic, Inc. v. Copier Sols., Inc.*, 126

F. Supp. 2d 1346, 1360 n.10 (S.D. Fla. 2000). Other courts apply the standard "notice pleading" of Federal Rule of Civil Procedure 8(a)(2) to promissory estoppel claims. *See, e.g., Capone v. Estate of Ison*, No. 06-80945-civ, 2007 WL 7144356, at * 1–2 (S.D. Fla. May 29, 2007).

Nothing in Chiron's promissory estoppel claim "sounds in fraud." Chiron simply alleges that Magellan represented that the patients had valid AmeriHealth policies and that the patients were pre-authorized for Chiron's services, that Magellan should have expected that Chiron would have relied on those representations, and that Chiron did in fact rely on those representations to its detriment. DE 47 at ¶¶ 30–35. This is a textbook claim of promissory estoppel: "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promise or a third person and which does induce such action or forbearance." *See* Restatement (Second) of Contracts § 90 (1979).

Chiron has met both pleading standards. While Chiron provided minimal detail regarding the verbal representations upon which it relied, it provided many details of the written representations. Chiron stated that it received verbal representations that mirrored those in the written pre-authorization letters. DE ¶¶ 17–19. It did not, however, provide the dates of the oral representations or who at Magellan provided these representations. Chiron did provide many details of the written representations. In its Second Amended Complaint, Chiron included a chart detailing, for each patient, the dates Magellan issued a pre-authorization letter to Chiron and the corresponding time period during which Magellan indicated the services were pre-authorized. DE 47 at 5. Magellan also attached copies of the letters upon which it relied. *See* DE 47-1. This is sufficient to place Magellan and AmeriHealth on notice of the precise misconduct with which they are charged. *See Peacock Med. Lab*, 2015 WL 5118122, at *4. If plaintiff presents a viable factual basis for the count, the addition of other information that does not meet the pleading

standard cannot make the claim fatally flawed. By providing specific detail regarding the written representations, Chiron met the heightened pleading standard with respect to the negligent misrepresentation count and, correspondingly, met the lower pleading standard required for the promissory estoppel counts.

    ii.    <u>Reasonable Reliance</u>

With respect to both the promissory estoppel counts and the negligent misrepresentation count, Magellan and AmeriHealth argue that "Chiron ignores the express disclaimer contained within the written authorization from Magellan" and, thus, it was unreasonable for Chiron to rely on any representations made by Magellan. DE 49 at 6, 14–15, 17–18. This argument is inappropriate at the motion to dismiss stage. Although there are situations where a court can determine if reliance was reasonable based solely on the pleadings, *see, e.g.*, *Mergens v. Dreyfoos*, 166 F.3d 1114, 1117–18 (11th Cir. 1999), the reasonableness of any reliance is often a question of fact and not appropriate for the motion to dismiss stage. *See, e.g. Brady v. Medtronic, Inc.*, No. 13-62199-civ-Bloom/Valle, 2015 WL 11181971, at *6 (S.D. Fla. Mar. 20, 2015); *Great Fla. Bank v. Countrywide Home Loans, Inc.*, No. 10-cv-22124, 2010 WL 4024892, at *5 (S.D. Fla. Oct. 13, 2010); *Point Blank Sols., Inc. v. Toyobo America, Inc.*, No. 09-61166-civ, 2010 WL 4624274, at *5 (S.D. Fla. Nov. 4, 2010).

A plaintiff's reliance on a promise must be reasonable to succeed on the merits of a promissory estoppel or negligent misrepresentation claim under Florida law. *See W.R. Grace & Co. v. Geodata Servs. Inc.*, 547 So. 2d 919, 924 (Fla. 1989) (quoting Restatement (Second) of Contracts § 90 (1979) (defining promissory estoppel as "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promise or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by

7

enforcement of the promise"); *Pitts Sales, Inc. v. King World Productions, Inc.*, 383 F. Supp. 1354, 1362 (S.D. Fla. 2005) (citing *Schloper v. Smilovits*, 689 So. 2d 1189, 1190 (Fla. Dist. Ct. App. 1997) (noting that "plaintiff's reliance on the representation must be reasonable" in a negligent misrepresentation claim). Any determination about if, as a matter of law, it was reasonable for Chiron to rely on the representations from Magellan is premature at this procedural stage.

Magellan and AmeriHealth also argue that "if no mention is made as to the cost of the treatment, the promissory estoppel claim can only go towards the type of treatment and not the cost of treatment." DE 49 at 7 (citing *Vencor Hosps. v. Blue Cross Blue Shield of R.I.*, 284 F.3d 1174, 1185 (11th Cir. 2002)). Chiron responds that it is seeking the preauthorized charges for the patients "up to the amount authorized under applicable law," DE 47 at 8, 9, 11, 12, 13–14, 15, 16, which is "the amount set by statute, if applicable, and by terms of the Patients' standard insurance policy," DE 62 at 7–8. This argument goes to the reasonableness of Chiron's reliance on the representations in the pre-authorization letters; Magellan and AmeriHealth's argument is essentially that it was unreasonable for Chiron to rely on the pre-authorization letters because the letters did not contain a specific reference to price. Again, any argument about the reasonableness of Chiron's reliance is not appropriate at this stage of the litigation.

Thus, the motions to dismiss the promissory estoppel and negligent misrepresentation claims are denied.

**B.**   **Breach of Direct Contract with Plaintiff Against AmeriHealth**

AmeriHealth argues that Chiron did not allege the elements of a contract, including offer and acceptance. DE 50 ¶¶ 12–16. There are two types of contracts—implied and express. An implied contract is "one that is inferred in whole or in part from the parties' conduct, not solely

from their words. . . . A contract implied in fact is not put into promissory words with sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement." *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 385 (Fla. Dist. Ct. App. 1997) (citations omitted). "Common examples of contracts implied in fact are where a person performs services at another's request, or where services are rendered by one person for another without his expressed request, but with his knowledge, and under circumstances fairly raising the presumption that the parties understood and intended that compensation was to be paid." *Id.* (citations omitted).

Chiron states a claim for an implied in fact contract. It alleges many facts to suggest that it rendered services with AmeriHealth's knowledge under circumstances suggesting that both AmeriHealth and Chiron understood that Chiron was to be paid, including AmeriHealth's transmittal of authorization codes for treatment, statements that the treatment was medically necessary, advice on how to expedite payment, and course of dealing, including prior payment. DE 47 ¶¶ 66–69. Thus, Chiron pleaded sufficient facts to state a claim for breach of contract[4] and AmeriHealth's motion to dismiss the breach of contract claim is denied.

C. **Violation of Florida Deceptive and Unfair Trade Practices Act and Violation of New Jersey Consumer Fraud Act Against Magellan and AmeriHealth**

In its Second Amended Complaint, Chiron asserted a claim for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") against Magellan and AmeriHealth and, in the alternative, a claim for violation of the New Jersey Consumer Fraud Act ("NJCFA") against Magellan and AmeriHealth. Magellan and AmeriHealth argue that Chiron does not have standing to bring a claim under FDUTPA or NJCFA because it is not a consumer. DE 49 at 10–

---

[4] Chiron styled their breach of contract claim as a "breach of direct contract" with AmeriHealth. Regardless of how Chiron styled its claim, the Court interprets it as a claim for breach of an implied contract. *See Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("[A] complaint need not pin plaintiff's claim for relief to a precise legal theory.").

9

14, 15. This requires the Court to analyze which state's law should apply.

A federal court sitting in diversity applies the conflict of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Before beginning a conflict of law analysis, however, a court should determine whether a conflict of laws truly exists. *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1234-35 (11th Cir. 1995).

   i. A Conflict Exists

A conflict exists between the laws of the two states as to whether the plaintiff must be a consumer under the statutes to have standing to sue. A plaintiff must be a consumer under NJCFA but need not be under FDUTPA.

   a. Standing Under NJCFA

Although NJCFA provides a private cause of action to "[a]ny *person* who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act," N.J. Stat. Ann. § 56:8-19 (emphasis added), "[t]he New Jersey Legislature enacted NJCFA to limit sharp business practices and dealings, and to protect *consumers* from being 'victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices.'" *Trans USA Products, Inc. v. Howard Berger Co., Inc.*, No. 07-5924, 2008 WL 3154753, at *6 (D.N.J. Aug. 4, 2008) (quoting *Daaleman v. Elizabethtown Gas Co.*, 390 A.2d 566, 569 (N.J. 1978) (emphasis added)).

Several courts have held that a plaintiff must be a consumer to have standing to bring a cause of action under NJCFA. *See, e.g. id.*; *Arc Networks, Inc. v. Gold Phone Card Co., Inc.*, 756 A.2d 636, 637–38 (N.J. Super. Ct. Law Div. 2000). As the New Jersey Supreme Court has not defined consumer, *Interlink Prods. Int'l, Inc. v. Cathy Trading, LLC*, No. 16-2153, 2017 WL

931712, at *2 (D.N.J. Mar. 9, 2017), courts analyze each transaction to determine if "the challenged services [are] of the type sold to the general public." *Fiderne Mgmt Co., Inc. v. Barrett*, 955 A.2d 940, 954 (N.J. Super. Ct. App. Div. 2008).

> b. Standing Under FDUTPA

FDUPTA was amended in 2001, replacing the word "consumer" with the word "person."[5] Following the amendment, there is a split of authorities on whether a plaintiff must be a consumer to bring a claim under FDUTPA. Some courts have found that, in amending the statute, the legislature was intending to give non-consumers standing under FDUTPA. *See, e.g.*, *Kelly v. Palmer, Reifler, & Assocs. P.A.*, 681 F. Supp. 2d 1356, 1374 (S.D. Fla. 2010); *Bailey v. St. Louis*, 196 So. 3d 375, 383 (Fla. Dist. Ct. App. 2016); *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So. 3d 164, 169 (Fla. Dist. Ct. App. 2015). Other courts have found that the legislature was trying to clarify that businesses could bring claims under FDUTPA, but that the statute was still intended to be restricted to consumers. *See, e.g.*, *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d. 1339, 1349–50 (S.D. Fla. 2009).

The Court aligns itself with the line of cases finding that non-consumers have standing under FDUTPA. Despite the existence of a split in the federal district courts, the state appellate courts that have ruled on the issue have determined that non-consumers have standing under FDUTPA. *See Off Lease Only, Inc. v. LeJeune Auto Wholesale, Inc.*, 187 So. 3d 868, 869 n.2

---

[5] Prior to 2001, the statute read:
> In any individual action brought by *a consumer* who has suffered a loss as a result of a violation of this part, such *consumer* may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105; however, no damages, fees, or costs shall be recoverable under this section against a retailer who has, in good faith, engaged in the dissemination of claims of a manufacturer or wholesaler without actual knowledge that it violated this part.

Fla. Stat. § 502.211(2) (2000). (emphasis added). After the 2001 amendment, the statute reads:
> In any action brought by *a person* who has suffered a loss as a result of a violation of this part, such *person* may recover actual damages, plus attorney's fees and court costs as provided in s. 501.2105. However, damages, fees, or costs are not recoverable under this section against a retailer who has, in good faith, engaged in the dissemination of claims of a manufacturer or wholesaler without actual knowledge that it violated this part.

Fla. Stat. § 502.211(2) (2001) (emphasis added).

(Fla. Dist. Ct. App. 2016); *Bailey*, 196 So. 3d at 383; *Caribbean Cruise Line*, 169 So. 3d at 169. When a state supreme court has not ruled on an issue, federal district courts interpreting state law "are bound to follow any decisions of the state's intermediate appellate courts unless there is some persuasive indication that the highest court of the state would decide the issue differently." *McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002). Thus, the Court follows the determinations of the Florida District Courts of Appeal that non-consumers may sue under FDUTPA.[6]

The Court notes that statutory interpretation favors reading FDUTPA to permit standing for non-consumers. In looking first at the plain meaning of the statute as the Court must, *Moonlit Waters Apartments, Inc. v. Cauley*, 666 So. 2d 898, 900 (Fla. 1996), the language in FDUTPA is not limited to consumers, *see* Fla. Stat. § 502.211(2) (2001) (emphasis added) (stating that "[i]n any action brought by *a person* . . . , such *person* may recover").

The Court is also guided by the cannon that "there is a strong presumption that, when a legislature amends a statute, it intends to alter the meaning of the statute." *Mikos v. Ringling Bros.-Barnum & Bailey Combined Shows, Inc.*, 497 So. 2d 630, 634 (Fla. 1986) (citations omitted). Thus, in changing the word "consumer" to the word "person," the legislature could not have intended for the statute to continue to be restricted to consumers. Moreover, the argument that the legislature was solely trying to clarify that businesses could bring claims under FDUTPA is weakened by the fact that "during the same [2001] session, the Legislature also amended section 501.203(7), Florida Statutes, to change the definition of 'consumer' to include a

---

[6] The Court notes that it previously adopted a Report and Recommendation determining that standing under FDUTPA was restricted to consumers. *See* Order Adopting Magistrate's R. & R., *Tech. Med. Advancements LLC v. Teegardin Enters. LLC*, No. 9:15-cv-80194 (S.D. Fla. Oct. 22, 2015); *Tech. Med. Advancements LLC v. Advanced Med. Distrib.* 2015 WL 11438210, at *5–6 (S.D. Fla. Oct. 10, 2015). Although *Caribbean Cruise Line*, the first Florida appellate court decision regarding standing under FDUTPA was issued four months prior to the Court's decision in *Tech. Med. Advancements*, it was not cited in the motion to dismiss in that case. Subsequently, it was not cited in the Report and Recommendation which the Court adopted.

'business' and 'commercial entity.'" *Caribbean Cruise Line*, 169 So. 3d at 168 (citations omitted). If the legislature had intended to clarify that businesses could sue under FDUTPA, it would not have needed to change "consumer" to "person." This further bolsters the argument that the legislature was intending to broaden the availability of FDUTPA to non-consumers.

    ii.    <u>Florida Law Applies</u>

Given the conflict, the Court must next determine which state's law to apply. Florida's conflict of law test utilizes the "significant relationship" test for torts, including fraud. *See Bishop v. Fla Specialty Paint Co.*, 389 So. 2d 999 (Fla. 1980); *Lacy v. BP, PLC*, No. 11-civ-21855, 2015 WL 3952593, at *1–2 (S.D. Fla. June 29, 2015). The significant relationship test utilizes the following framework:

> (1) A court, subject to constitutional restriction, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:
>     (a) the needs of the interstate and international systems,
>     (b) the relevant policies of the forum,
>     (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>     (d) the protection of justified expectation,
>     (e) the basic policies underlying the particular field of law,
>     (f) certainty, predictability and uniformity of result, and
>     (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971). A court applying section 6 principles in the context of fraud claims should also consider the following:

> (1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the

following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
- (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
- (b) the place where the plaintiff received the representations,
- (c) the place where the defendant made the representations,
- (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
- (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
- (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148 (1971). The presumption of the significant relationship test is that generally the law of the forum where the injury occurred determines the substantive issues unless another state has a more compelling interest. *See Bishop*, 389 So. 2d at 1001.

Section 6 Factors. The relevant Section 6 factors point to the application of Florida law. In passing FDUTPA, the Florida legislature was intending to protect citizens of Florida. *See Hutson v. Rexall Sundown, Inc.*, 837 So. 2d 1090, 1094 (Fla. Dist. Ct. App. 2003). Similarly, in passing NJCFA, the New Jersey legislature was intending to protect citizens of New Jersey. *See Weske v. Samsung Electronics America, Inc.*, No. 2:10-4811 (WJM), 2012 WL 833003, at *4 (D.N.J. Mar. 12, 2012). Chiron is a Florida company that operates facilities in Florida. New Jersey has no interest in having its law apply to protecting Chiron, whereas Florida has a great interest in the application of its law.

Section 148 Factors. The relevant Section 148 factors do not point clearly towards the application of either Florida or New Jersey law. Chiron acted in reliance upon Magellan's representations in Florida, where it rendered services. *See* DE 47 ¶ 1. Chiron also received the representations in Florida. *See* DE 27-1. It is unclear where Magellan made the representations.

Magellan is a citizen of Delaware with its principal place of business in Maryland. *Id.* ¶ 3. AmeriHealth is a citizen New Jersey with its principal place of business in Pennsylvania. *Id.* ¶ 3. Chiron is a citizen of and has its principal place of business in Florida. *Id.* ¶ 1.

In considering the factors and the presumption that the law of the place of injury applies, the Court finds that Florida law applies, and therefore, under FDUTPA Chiron has standing. Thus, Magellan and AmeriHealth's motions to dismiss the FDUTPA count on the basis of standing is denied. The motions to dismiss the NJCFA claim is granted.

## IV. CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED**:

1. Magellan Healthcare Inc.'s Motion to Dismiss, DE 49, is **GRANTED IN PART AND DENIED IN PART**.

2. AmeriHealth's Motion to Dismiss, DE 50, is **GRANTED IN PART AND DENIED IN PART**.

3. Count IV for violation of New Jersey Consumer Fraud Act is **DISMISSED WITHOUT PREJUDICE** as to both Magellan and AmeriHealth.

4. The following claims remain pending: promissory estoppel against Magellan (Count I), promissory estoppel against AmeriHealth (Count II), violation of Florida Deceptive and Unfair Trade Practices Act against Magellan and AmeriHealth (Count III), breach of contract on behalf of patients against AmeriHealth (Count V), breach of direct contract with Plaintiff against AmeriHealth (Count VI), and negligent misrepresentation against Magellan and AmeriHealth (Count VII).

**DONE AND ORDERED** in Chambers in Fort Pierce, Florida this 3rd day of October, 2017.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: All counsel of record via CM/ECF